L. A. HALLOWELL, N. BARRON, A. MOULTON (Cora Moulton, Administratrix, substituted for A. Moulton, deceased), S. BARRON, N. NORTON and LARS LARSON, Appellants, v. McLAUGHLIN BROTHERS.

Sales: BREACH OF WARRANTY: SUBMISSION OF ISSUE. Where the
1  plaintiffs, in an action for the breach of a warranty in the sale of a horse, alleged originally that the horse was purchased on a written warranty but during the trial withdrew such allegation and alleged an oral warranty, and there was evidence tending to establish the oral warranty, the issue as to the making and breach of the oral warranty should have gone to the jury; although it appeared that the purchaser accepted a writing containing a warranty different from the oral agreement.

Same: REMEDIES OF PURCHASER. A purchaser of personal property
2  under a warranty who has the option of exchanging it in case it does not fulfill the contract, may, if he elects, keep the property and sue for damages for the breach.

Proof of warranty. Mere possession and retention of a printed
3  warranty does not imply assent thereto, and the actual contract may be shown notwithstanding its possession by the purchaser of the property.

Pleadings: WITHDRAWAL: ESTOPPEL. The original allegations of a
4  petition which are withdrawn and another plea substituted are not binding upon the party, and do not operate as an estoppel.

Sales: BREACH OF WARRANTY: DIRECTED VERDICT. Under a contract
5  for the purchase of property providing that if it fails to fulfill the warranty it can be exchanged for other like property, evidence that an exchange was attempted but prevented by the false representations of the seller, will preclude a directed verdict for the seller.

*Appeal from Pocahontas District Court.*— HON. W. B. QUARTON, Judge.

MONDAY, APRIL 8, 1907.

REHEARING DENIED, TUESDAY, NOVEMBER 19, 1907.

SUIT to recover damages for breach of warranty of a stallion. There was a trial to a jury, and, after plaintiff's evidence had been introduced, there was a directed verdict for the defendants, and from a judgment on such verdict the plaintiffs appeal.— *Reversed.*

*Kelleher & O'Connor,* for appellants.

*Frank A. Fairburn* and *E. A. Morling,* for appellees.

SHERWIN, J.— In April, 1902, the defendants, a co-partnership, sold and delivered to the six plaintiffs named herein and to four of their neighbors, for the sum of $3,000, a stallion, known in the record as " Gambetta V." In their original petition, the plaintiffs alleged that the sale was made by a written contract, a copy of which was attached to the petition, marked Exhibit A, and made a part thereof. The following is a substantial copy of the same so far as material to the questions involved herein: " Guarantee.— If the above named stallion·does not get sixty per cent. of the producing mares with foal, with proper care and handling, we agree to replace him with another stallion of the same price, upon delivery to us at any one of our established offices where any one of us reside if the said stallion is in as sound and as good condition as he is at present. This is the only contract or guarantee given by us, and it is not to be changed or varied by any promises or representations of the agent. [Signed] McLaughlin Bros."

It will be noticed that this written contract provided that, if the stallion did not prove of certain breeding capacity, the defendants agreed to replace him with another stallion of the same price, upon delivery to them of Gambetta V. in as sound and as good condition as he was at the time of sale. Shortly after the delivery of Gambetta V. to the plaintiffs, they became dissatisfied with him, and exchanged him with defendants for a stallion called " Chan-

tilly," which horse the plaintiffs alleged was warranted to be of a certain standard as a sire. The plaintiffs kept him during the season of 1902, using him for breeding purposes; but he failed to meet the required standard, and in February, 1903, they exchanged him for another stallion, known as "Rotignon." The plaintiffs allege that Rotignon was delivered to them with a warranty substantially the same as given with the other two horses, and that he also fell below the standard fixed by the warranty. This horse died in the fall of 1903 shortly after the close of the stud season, and this suit was brought in December, 1903, to recover of the defendants the sum of $3,000 and interest as damages sustained by them growing out of the sale in question.

The plaintiffs rely for recovery upon the breach of an express warranty, the breach of an implied warranty, and failure of consideration. In their original petition, 1. SALES: breach of warranty: submission of issue. the plaintiffs alleged that all of these horses were sold them on a written contract substantially the same as the contract delivered to them with the first horse, Gambetta V.; but, during the trial of the case, they amended their petition, adding thereto counts 5 and 6, and thereafter they dismissed the first four counts of the petition, wherein they had pleaded the sale by written contract. In the fifth count of the petition, they pleaded facts constituting an implied warranty of the horses, and, in the sixth count they pleaded an express oral warranty made by the defendants through their agent, and allege that the writings (Exhibits A, B, and C) were delivered to them at the time the horses were delivered; but they say that they were not accepted as substitutes for the express or implied warranties. They further allege, in both of these counts of the petition, that by the terms of the oral warranties they were given an option to exchange the horses if they did not meet the conditions of the warranties. In their answer the defendants denied generally, and alleged that the only contract made with the plaintiffs in respect to

the stallion Rotignon was a contract, set out in the petition as Exhibit C, and that the defendants were at all times willing and ready to perform such contract, but that the plaintiffs had failed and refused to perform the same on their part; that the plaintiffs, in violation of said contract, demanded that they have the privilege of taking their pick of the defendants' horses at the agreed price, and by reason thereof they repudiated their contract and waived performance on the part of the defendants.

The trial court was clearly in error in directing a verdict for the defendants. There was much testimony on the part of the plaintiffs tending to show that all of these horses were sold and delivered to the plaintiffs upon an express oral warranty that they possessed a certain standard of breeding quality, and that, if they failed in this respect, a change could be made at the option of the plaintiffs. While the plaintiffs admit in their pleadings that the written exhibits were delivered to them at the time of the delivery of the horses, there was still testimony in the record tending to show that these writings, with the exception of Exhibit A, had never been assented to by the plaintiffs, or any of them, and that they were not therefore contracts between the parties. It requires no citation of authority to sustain the proposition that, if oral warranties were in fact made at the time of the sale and the delivery of the horses to the plaintiffs, and no writing was then executed and accepted by them, evidence of the oral warranty is competent, and does not tend to enlarge or vary the terms of the writing. The rule that oral testimony is not admissible for the purpose of enlarging or varying the terms of a written contract can only be applied where there is in fact a written contract, and it is elemental that to constitute a contract, either written or oral, there must be a meeting of the minds of the contracting parties. In this case, as we have seen, there was, perhaps, a slight conflict in the evidence as to whether these writings were accepted by the plaintiffs as containing the

contracts of sale; but whatever conflict of this nature there was, it was so slight that a jury would not have been justified in finding that the writings expressed the contract between the parties, and, were it not for the allegations of the original petition basing the plaintiff's claim for damages on the writings, there could be no possible question as to the error of the trial court in directing a verdict for the defendants.

If there was in fact an oral contract warranting the horses substantially as shown by the evidence, and at the same time giving the plaintiffs an option to exchange if they did not meet the requirements of the warranty, the option was clearly for the benefit of the purchasers and did not modify or change their rights under the warranty; and, if there was a breach of such warranty, they had the right to keep the horse and recover damages for such breach. In other words, they were not required, under the oral contract proven, to exercise the option therein given to the exclusion of other remedies. *Hefner v. Haynes,* 89 Iowa, 616; *Love v. Ross,* 89 Iowa, 400; *Elwood v. McDill,* 105 Iowa, 437; *Valerius v. Hockspiere,* 87 Iowa, 332; *Blaess v. Nichols,* 115 Iowa, 373.

2. SAME: remedies of purchaser.

The appellees claim, and the evidence shows, that these writings were received and retained by the plaintiffs; but such possession and retention do not alone imply assent to the terms thereof, and the actual contract may be shown, notwithstanding such possession. *Valerius v. Hockspiere, supra; Pray v. Insurance Co.,* 104 Iowa, 114.

3. PROOF OF WARRANTY.

The appellees also contend that the appellants are bound by the allegations of their original petition; but we do not think their position sound. After much of the evidence had been introduced, as we have heretofore said, the first four counts of the petition were withdrawn, and, while the allegations therein may still have been used as evidence contra-

4. PLEADINGS: withdrawal: estoppel.

dicting the subsequent claim of the plaintiffs that oral warranties had been made, such allegations were not conclusive, and did not act as an estoppel upon the plaintiffs. *Johnson v. McGrew,* 42 Iowa, 555; *Williams v. Williams,* 115 Iowa, 520; *Marshall Field & Co. v. Ruffcorn & Co.,* 117 Iowa, 157; *Arrison v. Supreme Council,* 129 Iowa, 303.

If the appellees' contention that the sales were made ,upon the written contracts, and that the plaintiffs failed to comply with the conditions thereof in retaining the horse

5. SALES: breach of warranty: directed verdict.

Rotignon, were true, the trial court. erred, nevertheless, in directing a verdict for the defendants, because there was evidence in the record tending to show that the plaintiffs had attempted to make the exchange provided for in the writing, and that they were prevented from doing so by the false representations of the defendants.

Other questions are discussed in the appellant's brief, but we do not find it necessary to consider them, because of our conclusions on the questions which have already been discussed. There was manifest error in directing a verdict for the defendants, and in rendering a judgment thereon, and the case must be reversed.— *Reversed.*